**AL–MUSTAFA IRSHAD, Plaintiff,**

v.

**H. G. SPANN, et al., Defendants.**

**Civ. A. No. 81–0456–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

July 19, 1982.

Al-Mustafa Irshad, pro se.

Eric K. G. Fiske, Asst. Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM OPINION

RICHARD L. WILLIAMS, District Judge.

Plaintiff Al-Mustafa Irshad is an inmate at the Virginia State Penitentiary. He has filed a section 1983 action against three correctional officers at the Powhatan Correctional Center. *See* 42 U.S.C. § 1983 (1976). Irshad's complaint essentially alleges that he was deprived of four items of personal property through the negligence of these officers. The defendants move to dismiss the complaint for failure to state a cognizable section 1983 claim. *See* Fed.R. Civ.P. 12(b)(6). The officers ask, in the alternative, for summary judgment. *See* *id.* 56(b).

## I. FACTUAL BACKGROUND

In late 1980, Irshad was incarcerated at the Powhatan Correctional Center. On the evening of November 30, 1980, a fight developed between Irshad and another inmate. A correctional officer discovered this altercation about 7:25 p. m. He reported it to Captain H. G. Spann. Spann decided to place Irshad in prehearing detention. He, therefore, instructed Corporal L. S. Hatcher to make arrangements for securing the plaintiff's personal property.

About 7:30 p. m., Officer R. N. Booker received a phone call from Hatcher ordering him to secure Irshad's property. Booker claims that he immediately went to the plaintiff's cell. At this time, he discovered that there was no lock on the cell. As a consequence, he had to leave the area to obtain a state padlock. After locking the cell, he allegedly remained in the vicinity for a few minutes. During this time period, he observed several inmates gathering in front of Irshad's cell. Booker, however, was unable to investigate this occurrence, because he allegedly had to return to his duty station. Booker asserts that he checked Irshad's cell about fifteen minutes later. At this time, the lock had disappeared and the door was open. Booker then locked the entire side of the cell-house.

Corporal S. L. Fisher inventoried Irshad's personal property about 8:00 p. m. that evening. Fisher's inventory sheet does not list four items that the plaintiff claims were in his cell at the time of his detention. Irshad contends that these belongings are

missing, because fellow inmates stole them from his cell after his detention. The plaintiff initially attempted to recover his property through the inmate grievance procedures, but was unsuccessful. The fact that Powhatan authorities had no record of three of the four items that Irshad reported stolen hampered recovery efforts. Prison regulations require inmates to register all personal property with prison officials.

On May 15, 1981, Irshad filed a section 1983 action in this court against the warden of Powhatan. In his original complaint, Irshad essentially alleged that Spann, Hatcher, and Booker had acted negligently in securing his property. He asserted that this negligence had caused the loss of the missing items. The plaintiff, however, failed to join these officers as defendants.

On August 7, 1981, the court dismissed this action on the ground that the warden was not the party responsible for Irshad's loss. *See Irshad v. Johnson*, Civil No. 81–0456–R (E.D.Va. Aug. 7, 1981), *vacated*, 673 F.2d 1311 (4th Cir. 1982). The plaintiff appealed this dismissal to the Fourth Circuit. On January 26, 1982, the Fourth Circuit vacated the dismissal and remanded the case for further consideration. *See* 673 F.2d at 1311. In particular, the Fourth Circuit requested this court to reconsider the case in light of the Supreme Court's recent decision in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The appellate court also ordered this court to assist the plaintiff in determining the parties legally responsible for his loss.

On remand, the court added Spann, Hatcher, and Booker as defendants in the case. The court also dismissed the warden from the suit on the ground that he was not legally responsible for the loss. The remaining defendants now move under Rule 12(b)(6) to dismiss the complaint. They request summary judgment in the alternative.

## II. LEGAL ANALYSIS

The defendants move to dismiss Irshad's complaint for failure to state a cognizable section 1983 claim. The defendants rely primarily on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). They claim that a negligent deprivation of property does not qualify as a due process violation, because Virginia law provides an adequate remedy for the deprivation. The defendants also raise the qualified immunity of *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), as a ground for dismissal. They assert that they are immune from liability, because they acted in good faith at all times.

The court first will decide the issue of whether the complaint states a valid section 1983 claim. In *Parratt*, the Supreme Court held that two elements are essential to a section 1983 action. First, the defendant must have been "acting under color of state law." 451 U.S. at 535, 101 S.Ct. at 1912. Second, the defendant's conduct must have "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Id.* In this case, the prison officials that allegedly deprived Irshad of his property clearly were acting under color of state law. *See id.* at 535–36, 101 S.Ct. at 1912–1913; *Monroe v. Pape*, 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961). Thus, the critical question is whether the defendants' actions deprived the plaintiff of any constitutional right.

The *Parratt* doctrine provides the answer to this question. In *Parratt*, a Nebraska inmate alleged that state prison officials had negligently lost his hobby kit. *See* 451 U.S. at 530–31, 101 S.Ct. at 1910. He contended that this deprivation violated due process. *See id.* The inmate's allegations did not implicate any of the substantive constitutional guarantees made applicable to the states by the fourteenth amendment. *See id.* at 536, 101 S.Ct. at 1913. The Supreme Court, therefore, held that the property deprivation in question did not violate due process, because Nebraska law provided an adequate remedy for the deprivation. *See id.* at 537–44, 101 S.Ct. at 1913–1917. Under this procedural due process analysis, the inmate's complaint did not state a cognizable section 1983 claim.

If the plaintiff in *Parratt* had alleged a violation of a substantive constitutional guarantee, such as the fourth or the eighth amendment, he would have stated a cognizable cause of action under section 1983. The fact that an adequate state remedy exists for a substantive due process claim does not remove the constitutional question from that claim. Thus, the existence of the state remedy does not divest the federal courts of subject-matter jurisdiction. *See Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); *Duncan v. Poythress*, 657 F.2d 691, 704–05 (5th Cir. Unit B 1981), *cert. granted*, —— U.S. ——, 102 S.Ct. 1426, 71 L.Ed.2d 647 (1982). The federal and state courts in effect have concurrent jurisdiction over torts based on substantive constitutional guarantees. The *Parratt* analysis, therefore, applies only to state-law tort claims brought into federal court on procedural due process grounds. *See Parratt v. Taylor*, 451 U.S. at 536, 101 S.Ct. at 1913; *Duncan v. Poythress*, 657 F.2d at 704–05; *Howse v. DeBerry Correctional Institute*, 537 F.Supp. 1177, 1180 (M.D.Tenn.1982).

The *Parratt* decision governs Irshad's case, because his allegations implicate only the procedural aspects of due process. The due process clause provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." *Parratt* holds that there are four requirements for a valid due process claim. *See* 451 U.S. at 536–37, 101 S.Ct. at 1913. The plaintiff's allegations definitely satisfy three of these requirements. First, the defendants acted under color of state law. Second, the four missing items fall within the definition of property. *See id.* at 536, 101 S.Ct. at 1913. Third, the alleged loss qualifies as a deprivation. *See id.* at 536–37, 101 S.Ct. at 1913. The only issue remaining is whether this deprivation was without due process of law. *See id.* at 537, 101 S.Ct. at 1913; *Baker v. McCollan*, 443 U.S. 137, 145, 99 S.Ct. 2689, 2694, 61 L.Ed.2d 433 (1979).

In determining whether the alleged deprivation violated due process, the court must resolve two questions. The court first must decide whether a postdeprivation remedy meets the requirements of procedural due process in this case. *See* 451 U.S. at 537–43, 101 S.Ct. at 1913–1916. If a postdeprivation remedy is sufficient, the court then must focus on whether the particular tort remedy provided by state law satisfies due process. *See id.* at 543–44, 101 S.Ct. at 1916–1917.

The court first must confront the issue of whether a predeprivation remedy is necessary for the kind of deprivation that Irshad alleges. In approaching this question, *Parratt* drew a distinction between actions taken pursuant to an established state procedure and isolated actions that do not comply with state practice:

The justifications which we have found sufficient to uphold takings of property without any predeprivation process are applicable to a situation such as the present one involving a tortious loss of a prisoner's property as a result of a random and unauthorized act by a state employee. In such a case, the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur. It is difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place. . . . Indeed, in most cases it is not only impracticable, but impossible to provide a meaningful hearing before the deprivation. That does not mean, of course, that the State can take property without providing a meaningful postdeprivation hearing.

*Id.* at 541, 101 S.Ct. at 1915. *See also Logan v. Zimmerman Brush Co.*, —— U.S. ——, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982); *Vinson v. Blankenship*, 679 F.2d 891, slip op. at 3–4 (4th Cir. 1982) (per curiam). Any negligent loss of Irshad's property was an isolated act of misconduct by state officials. A predeprivation hearing, therefore, would have been impractica-

ble.[1] As a consequence, a meaningful post-deprivation remedy is sufficient under the circumstances. *See* 451 U.S. at 541.

■ The question now becomes whether Virginia law provides a postdeprivation remedy that meets the requirement of due process. The court holds that Virginia has two such remedies. First, the state has provided inmate grievance procedures. *See Smith v. Kelly*, 679 F.2d 888 No. 80–6812, slip op. at 3 (4th Cir. 1982) (per curiam). These procedures allow a prisoner to receive compensation for property lost through the negligence of prison officials. *See id.* This administrative remedy is sufficient to satisfy due process, because it "could have fully compensated [the prisoner] for the property loss he suffered." *Id.* The fact that Irshad

did not actually receive compensation under the grievance procedures does not transform his state-law claim into one of constitutional magnitude.

■ The second state remedy that satisfies due process is the common-law action for conversion or detinue. *See Frazier v. Collins*, 538 F.Supp. 603, 606 (E.D.Va.1982). The defendants in this case had a state-law duty to secure Irshad's belongings after he was placed in prehearing detention. *See Whorley v. Karr*, 534 F.Supp. 88, 90 (W.D. Va.1981). If the plaintiff can show that the defendants breached this duty, he will recover full compensation for his property loss. *See id.* The fact that Irshad is a prisoner does not impede his ability to recover in state court.[2] *See Frazier v. Collins*,

---

1. This same analysis should apply to intentional and nonproperty deprivations that do not implicate substantive constitutional guarantees. *See Rutledge v. Arizona Board of Regents*, 660 F.2d 1345, 1352 (9th Cir. 1981), *cert. granted*, ---- U.S. ----, 102 S.Ct. 3508, 73 L.Ed.2d 1382 (1982); *Frazier v. Collins*, 538 F.Supp. 603, 607 (E.D.Va.1982); *Waterstraat v. Central State Hospital*, 533 F.Supp. 274, 275–76 (W.D.Va.1982); *Eberle v. Baumfalk*, 524 F.Supp. 515, 517–18 (N.D.Ill.1981); *Peery v. Davis*, 524 F.Supp. 107, 108 (E.D.Va.1981); *Meshkov v. Abington Township*, 517 F.Supp. 1280, 1286 (E.D.Pa.1981); *Sheppard v. Moore*, 514 F.Supp. 1372, 1376 (M.D.N.C.1981). An example of such a deprivation is assault and battery committed by a state official outside of the prison context. The loss caused by such misconduct "is not a result of some established state procedure and the State cannot predict precisely when the loss will occur." *Parratt v. Taylor*, 451 U.S. 527, 541, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981). Thus, the commission of this tort should not violate due process, if the state provides an adequate postdeprivation remedy. *See id.*

Some courts have attempted to draw a distinction between negligent property deprivations and those involving intentional acts or nonproperty interests. *See Howse v. DeBerry Correctional Institute*, 537 F.Supp. 1177, 1178–80 (M.D.Tenn.1982); *Peters v. Township of Hopewell*, 534 F.Supp. 1324, 1333–34 (D.N.J. 1982); *Tarkowski v. Hoogasian*, 532 F.Supp. 791, 794–95 (N.D.Ill.1982); *Parker v. Rockefeller*, 521 F.Supp. 1013, 1016 (N.D.W.Va.1981). *See also Parratt v. Taylor*, 451 U.S. at 545–46, 101 S.Ct. at 1917–1918 (Blackmun, J., concurring). These courts do not provide any logical reason for drawing this distinction other than to state the conclusion that negligent property deprivations are qualitatively different from

other deprivations. Under this analysis, a meaningful postdeprivation remedy is not sufficient to satisfy due process when the state employee's misconduct is intentional or implicates a nonproperty interest. *See Howse v. DeBerry Correctional Institute*, 537 F.Supp. at 1180–81; *Tarkowski v. Hoogasian*, 532 F.Supp. at 795.

This court rejects any distinction between negligent property deprivations and other takings for two reasons. First, the majority opinion in *Parratt* does not make any such distinction. *Parratt* distinguishes only between isolated acts of misconduct and actions taken pursuant to an established state procedure. *See* 451 U.S. at 541, 101 S.Ct. at 1915. It is this factor that controls whether a meaningful postdeprivation remedy will suffice. *See id.* at 541–43, 101 S.Ct. at 1915–1916.

Second, the citation in *Parratt* to *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), affirmatively indicates that the analysis of *Parratt*-governs intentional and nonproperty torts. *See* 451 U.S. at 542–43, 101 S.Ct. at 1916. *Ingraham* dealt with the constitutionality of corporal punishment in public schools. *See* 430 U.S. at 653, 97 S.Ct. at 1403. The Supreme Court there held that an intentional liberty deprivation such as paddling did not violate the fourteenth amendment, because the state common-law remedies were sufficient to satisfy the procedural requirements of due process. *See id.* at 676–83, 97 S.Ct. at 1415–1419. Thus, the fact that *Parratt* cites *Ingraham* with approval reinforces the conclusion that *Parratt* applies to all types of deprivations.

2. This conclusion assumes that the state courts will construe prisoner petitions liberally, so that the petitions are decided on the merits. First, the state courts should not dismiss a

538 F.Supp. at 608. Virginia law permits an indigent prisoner to proceed *in forma pauperis* and to have counsel appointed in certain circumstances. *See* Va.Code § 14.-1–183 (1978). In addition, an inmate may proceed in state court either with or without the appointment of a committee. *See* Va.Code § 53.1–222 (1982); *Cross v. Sundin*, 222 Va. 37, 278 S.E.2d 805 (1981).

■ The only impediment to Irshad's recovery in state court is the doctrine of sovereign immunity.[3] *See Crotts v. Bolling*, 679 F.2d 879 No. 82–6029, slip op. at 3 (4th Cir. Apr. 22, 1982) (per curiam); *Frazier v. Collins*, 538 F.Supp. at 606–07; *Whorley v. Karr*, 534 F.Supp. at 89–90. Under Virginia law, a state employee who acts intentionally or in a grossly negligent manner is not immune from liability in his individual capacity. *See James v. Jane*, 221 Va. 43, 267 S.E.2d 108, 113 (1980); *Elder v. Holland*, 208 Va. 15, 155 S.E.2d 369, 372–73 (1967).

A state employee, however, may be immune for acts of simple negligence. *See James v. Jane*, 267 S.E.2d at 113. In determining whether the defendants in the present case would be immune from liability, the court must balance three criteria: (1) whether the activity in question qualifies as a governmental intrusion into formerly private areas; (2) whether the action taken involved the use of judgment and discretion; and (3) the degree of control and direction that the state exercised over the employee taking the action. *Id.* at 113. It is unclear whether a Virginia court would grant immunity in this case. *See Frazier v. Collins*, 538 F.Supp. at 606–07; *Whorley v. Karr*, 534 F.Supp. at 89–90.

The court holds that the possibility of a sovereign immunity defense for the correctional officers does not deprive Irshad of due process in the state courts. The federal courts provide state officials with a quali-

poorly articulated *pro se* complaint, unless it appears beyond doubt that the plaintiff could prove no set of facts entitling him to relief. *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978). It clearly is improper to dismiss a suit simply because the prisoner has mislabeled either his pleadings or his cause of action. *See* 574 F.2d at 1151. Second, the state courts should aid a *pro se* litigant in determining the identity of the proper defendants for his suit:

> A district court is not required to act as an advocate for a *pro se* litigant; but when such a litigant has alleged a cause of action which may be meritorious against a person or persons unknown, the district court should afford him a reasonable opportunity to determine the correct person or persons against whom the claim is asserted, advise him how to proceed and direct or permit amendment of the pleadings to bring that person or persons before the court.

*Id.* at 1152–53. Finally, the state courts should advise each *pro se* petitioner of his right to file opposing affidavits to defeat a defendant's motion for summary judgment. *See Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975).

Failure to follow some or all of these procedures might result in a finding that Virginia does not provide a meaningful postdeprivation remedy for misconduct by prison officials. The court, however, has no evidence that Virginia courts do not or will not adhere to these procedures. Thus, the conclusion that prisoners have an unimpeded ability to recover in state court is appropriate.

**3.** This impediment has largely disappeared for tort claims accruing on or after July 1, 1982. *See Frazier v. Collins*, 538 F.Supp. 603, 605 (E.D.Va.1982). On that date, the Virginia Tort Claims Act went into effect. *See* Va.Code 8.01–195.1 to –195.8 (Supp.1982). This act essentially waives the state's sovereign immunity to the extent of $25,000 per claim:

> Subject to the provisions of this article, the Commonwealth shall be liable for claims for money only accruing on or after July one, nineteen hundred eighty-two, on account of damage to or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any State employee while acting within the scope of his employment under circumstances where the Commonwealth, if a private person, would be liable to the claimant for such damage, loss, injury or death; provided, however, that the Commonwealth shall not be liable for interest prior to judgment or for punitive damages, nor shall the amount recoverable by any claimant exceed twenty-five thousand dollars, or the maximum limits of any liability policy maintained to insure against such negligence or other tort, if such policy is in force at the time of the act or omission complained of, whichever is greater, exclusive of interest and costs.

*Id.* § 8.01–195.3. Thus, Virginia law clearly provides a meaningful postdeprivation remedy for tort claims of $25,000 or less accruing after July 1, 1982.

fied immunity in section 1983 actions. *See Procunier v. Navarette*, 434 U.S. 555, 561–62, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978); *Wood v. Strickland*, 420 U.S. 308, 321–22, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). The net effect of this immunity is to prevent recovery against state officials in their individual capacities for acts of simple negligence. *See Procunier v. Navarette*, 434 U.S. at 566, 98 S.Ct. at 862; *Hughes v. Blankenship*, 672 F.2d 403, 406 (4th Cir. 1982). *See also Harlow v. Fitzgerald*, —— U.S. ——, —— – ——, 102 S.Ct. 2727, 2735–2738, 73 L.Ed.2d 396 (1982) (eliminates subjective component of good-faith immunity). This federal immunity defense clearly does not violate due process. The due process standard applied to the federal government under the fifth amendment is identical to the standard imposed upon the states by the fourteenth amendment. *See Paul v. Davis*, 424 U.S. 693, 702 n.3, 96 S.Ct. 1155, 1161 n.3, 47 L.Ed.2d 405 (1976); *Curry v. McCanless*, 307 U.S. 357, 370, 59 S.Ct. 900, 907, 83 L.Ed. 1339 (1939); *Heiner v. Donnan*, 285 U.S. 312, 326, 52 S.Ct. 358, 361, 76 L.Ed. 772 (1932); *Hibben v. Smith*, 191 U.S. 310, 325, 24 S.Ct. 88, 91, 48 L.Ed. 195 (1903). Thus, the Virginia immunity defense must comply with due process, because its federal counterpart does. The state common-law remedy, therefore, qualifies as a meaningful postdeprivation remedy.

The court holds that Irshad has not stated a cognizable section 1983 claim, because the Virginia administrative and tort remedies meet the requirements of procedural due process. The plaintiff, therefore, must bring his negligence claim in state court if he desires compensation for his loss. After *Parratt*, a Virginia prisoner can obtain a hearing in federal court on an isolated act of official misconduct only if the act violates his substantive due process rights. This rule should apply regardless of whether the misconduct involved either an intentional act or a nonproperty interest.

Finally, the court notes that the qualified immunity available in federal court would protect the defendant even if Irshad's complaint were to state a valid section 1983 claim. This immunity precludes recovery against a state employee in his individual capacity for acts of simple negligence. See *Procunier v. Navarette*, 434 U.S. at 566, 98 S.Ct. at 862; *Hughes v. Blankenship*, 672 F.2d at 406. Irshad's complaint alleges no more than simple negligence. In addition, the only relief requested by the plaintiff is monetary compensation. Thus, dismissal of the action is also appropriate on immunity grounds. See *Harlow v. Fitzgerald*, —— U.S. at —— – ——, 102 S.Ct. at 2735–2738.