George HICKMAN, Jr., Plaintiff,

v.

Sheriff Alvin HUDSON, et al., Defendants.

Civ. A. No. 82-0562-R.

United States District Court,
W.D. Virginia,
Roanoke Division.

March 2, 1983.

George Hickman, Jr., pro se.

Robert F. Rider, Roanoke, Va., for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

George Hickman, Jr., a Virginia inmate proceeding *pro se* and *in forma pauperis,* brings this 42 U.S.C. § 1983 action against Sheriff Alvin Hudson and Deputy Henderson for an alleged violation of his constitutional rights. The court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(3). This action is before the court on defendants' motion to dismiss for failure to state an actionable claim. *See* Fed.R.Civ.P. 12(b)(6).

## I. FACTUAL BACKGROUND

Plaintiff's claim arises out of an incident that allegedly occurred while he was incarcerated at the Roanoke City Jail awaiting transfer to the state penitentiary. He alleges in his complaint that on June 29, 1982, at approximately 5:00 p.m., defendant Deputy Henderson negligently closed a cell door on plaintiff's right hand while he was attempting to remove a face cloth that was stuck in the cell door. Plaintiff further alleges that the cell door severed the tip of his middle finger, causing him extreme mental anguish and pain. Plaintiff received medical treatment immediately after

the accident, but he was in pain all that night as he did not receive any pain medication until the next day. He contends that the deputy's negligence subjected him to cruel and unusual punishment in violation of the eighth amendment. As relief, plaintiff seeks $200,000 in damages.

In his answer to the complaint, Sheriff Hudson denied that any one named "Henderson" was in his employ during the period alleged by plaintiff. He further denied that he or anyone in his employ negligently closed a cell door on the occasion alleged by plaintiff or that the alleged incident took place on June 29, 1982. In addition, Sheriff Hudson moved to dismiss the complaint on various grounds, including failure to state a claim upon which relief can be granted. *Id.*

The court notified plaintiff of defendants' answer and motion to dismiss and gave him fifteen days to submit relevant evidence in support of his position. The notice warned that his failure to respond may, if appropriate, result in summary judgment being granted for defendants.

After being granted his request for an extension of time in which to file his response to the defendants' answer and motion to dismiss, plaintiff filed an affidavit in which he elaborated on and corrected the allegations in his complaint. Plaintiff stated that the incident occurred on June 28, 1982, and that he had learned that "Henderson" was the deputy's nickname. Plaintiff reportedly wrote a letter to Sheriff Hudson in an attempt to identify the deputy involved in the incident, to which the Sheriff responded by denying knowledge of any incident occurring on that date.

Defendants' motion to dismiss is now ready for disposition.

## II. LEGAL ANALYSIS

■ Two essential elements must be alleged in order to state a claim under 42 U.S.C. § 1983. First, there must be conduct committed by a person acting under color of state law; secondly, the conduct must have deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

■ In addition, the defendant must have personally participated or acquiesced in the alleged constitutional violation because the doctrine of *respondeat superior* is inapplicable to section 1983 suits. *Monell v. Dep't of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Vinnedge v. Gibbs,* 550 F.2d 926 (4th Cir. 1977). Even liberally construed, plaintiff's complaint and affidavit contain no allegation or evidence that Sheriff Hudson personally participated or acquiesced in the deputy's alleged negligence. Accordingly, plaintiff has failed to state a claim against Sheriff Hudson.

Deputy "Henderson" was, however, personally involved in the alleged constitutional violation and undoubtedly acted under color of state law when closing the cell door. The issue remains whether the alleged negligent closing of the cell door on plaintiff's hand violated his eighth amendment right to freedom from cruel and unusual punishment or any other constitutional right.

### A. Cruel and Unusual Punishment

Because the compatibility of punishments with the eighth amendment is in part determined by "the evolving standards of decency that mark the progress of a maturing society," *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958), a concrete definition of cruel and unusual punishment is difficult. Nevertheless, as a general rule, "only the 'unnecessary and wanton infliction of pain' constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Ingraham v. Wright,* 430 U.S. 651, 670, 97 S.Ct. 1401, 1412, 51 L.Ed.2d 711 (1977) (citations omitted); *see Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.). Thus, "deliberate indifference to serious medical needs of prisoners [violates the eighth amendment because it] constitutes the 'unnecessary and wanton infliction of pain' . . . ." *Estelle v. Gamble,* 429 U.S. 97,

104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Similarly, the unjustified or excessive use of force or infliction of bodily harm upon a prisoner amounts to cruel and unusual punishment when such is inspired by malice or sadism for the purpose of causing harm rather than a good faith effort to maintain or restore order. *See King v. Blankenship,* 636 F.2d 70, 72–73 (4th Cir.1980).

But "not every use of excessive force gives rise to a cause of action under § 1983 merely because it gives rise to a cause of action under state tort law," *id.* at 72, because "[s]ection 1983 imposes liability for violations of rights protected by the Constitution, not for violations of *duties of care* arising out of tort law." *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979) (emphasis added).

Although the *supra* authority suggests that an intent to be cruel or cause harm is essential to state a claim under the eighth amendment, in a case involving an alleged eighth amendment violation resulting from a prison guard's negligent shooting of an inmate, the Court of Appeals for the Fifth Circuit held that "improper motive is not a prerequisite to suit under section 1983." *Roberts v. Williams,* 456 F.2d 819, 826 (5th Cir.), *cert. denied,* 404 U.S. 866, 92 S.Ct. 83, 30 L.Ed.2d 110 (1971). And in cases where prisoners have alleged that their eighth amendment rights were violated by prison officials' negligent failure to protect them from attacks by fellow inmates, the Fifth Circuit has held that section 1983 "gives a remedy ... for negligent acts which result in injuries to the prisoner." *Fox v. Sullivan,* 539 F.2d 1065, 1066 (5th Cir.1976), *later app.,* 558 F.2d 235 (1977); *Parker v. McKeithen,* 488 F.2d 553, 556 (5th Cir.), *cert. denied,* 419 U.S. 838, 95 S.Ct. 67, 42 L.Ed.2d 65 (1974). Similarly, the Court of Appeals for the Fourth Circuit held in *Withers v. Levine,* 615 F.2d 158, 162 (4th Cir.) (prison officials' negligent failure to protect prisoners from aggressive sexual assaults), *cert. denied,* 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980), that

> [w]hen there is present in a prison or in an identifiable portion of it, a pervasive risk of harm to all prisoners, or to an identifiable group of them, the constitutional prohibition against cruel and unusual punishment requires that prison officials exercise reasonable care to provide reasonable protection from such unreasonable risk of harm. Given the pervasive and unreasonable risk of harm, negligence by prison officials in their performance of their duty of care is a violation of the constitutional right and actionable under § 1983.

But while the Fourth Circuit stated that "negligence by a state official under some circumstances may itself violate a constitutionally protected right," *id.,* it also recognized that "the Constitution of the United States does not lend its protection to every victim of a common law tort by state officials and employees." *Id.*

█ Thus, although negligence by prison officials may constitute cruel and unusual punishment proscribed by the eighth amendment, a close reading of the *supra* authorities reveals that negligent conduct by state officials violates the eighth amendment in only certain circumstances. For example, the Fourth Circuit emphasized that a prisoner could recover for prison officials' negligent failure to protect him from violence or sexual assault from his fellow inmates only when there was "a pervasive risk of harm to inmates from other prisoners ...." *Withers v. Levine,* 615 F.2d at 161, *quoting, Woodhous v. Virginia,* 487 F.2d 889 (4th Cir.1973). In turn, a "pervasive risk of harm" was shown by proof that "violence and sexual assaults occur [at the prison] with sufficient frequency that the younger prisoners, particularly those slightly built, are put in reasonable fear for their safety and to reasonable apprise prison officials of the existence of the problem and the need for protective measures." *Id.* at 161. Thus, the risk of harm must be such as to put prison officials on notice that the safety problem exists and that protective measures are needed. Under such circumstances, the absence of any procedure or guideline to protect prisoners from the risk of harm is "probably much more than simple negligence;" *id.* at 162,

rather, it amounts to "complete indifference to the problem of safety." *Id.* In·short, negligent conduct in the context of a "pervasive and unreasonable risk of harm" constitutes complete indifference to prisoners' safety needs in violation of the eighth amendment.

This analysis is consistent with the Fifth Circuit's reasoning in *Roberts v. Williams,* supra. There the court held that the shooting of a prisoner which resulted from a state official's negligent failure to train a guard in handling a shotgun violated the eighth amendment because it found "cruelty in the sustained maintenance, over a period of time of a needlessly hazardous condition for plaintiff and other prisoners." 456 F.2d at 827. The court stated that in an eighth amendment case where there was "no conscious purpose to inflict suffering," *id.,* it "would look next for a callous indifference to it at the management level, in the sustained knowing maintenance of bad practices and customs. When prison wardens are cruel in their attitudes, negligent as well as intended injuries result." *Id.* Accordingly, in *Roberts,* the negligent shooting of a prisoner violated the eighth amendment because the evidence "demonstrated indifference to prisoners' safety, as establishing a cruel state of mind which with physical harm and causation provide the basis for Eighth Amendment tort liability." *Id.* at 828.

■ This court therefore holds that negligent conduct that amounts to deliberate indifference to serious safety needs of prisoners constitutes the "unnecessary and wanton infliction of pain" prohibited by the eighth amendment. *See Estelle v. Gamble,* 429 U.S. at 106, 97 S.Ct. at 292 ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment.") (footnote omitted); *Little v. Walker,* 552 F.2d 193 (7th Cir.1977), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 530 (1978). The question remains whether plaintiff's allegation that a jailer negligently closed a cell door on his hand states a claim under the eighth amendment.

■ A *pro se* complaint cannot be dismissed for failure to state a claim unless "it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Haines v. Kerner,* 404 U.S. 519, 520–521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972), *quoting, Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). But even liberally construed, plaintiff's allegations fail to state an eighth amendment claim. Plaintiff alleges only that an officer negligently closed a cell door on his hand. There is no allegation that even suggests that inmates at the Roanoke City Jail face a pervasive risk of harm from having cell doors closed on their hands. Nor is there any indication in plaintiff's complaint or affidavit of a sustained knowing maintenance of inadequate training of jailers in the proper procedure for closing cell doors. In short, it is beyond doubt that the facts alleged by plaintiff do not constitute negligent conduct amounting to deliberate indifference to his serious safety needs.

"An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain." *Estelle v. Gamble,* 429 U.S. at 105, 97 S.Ct. at 291. Although medical malpractice may give rise to a state tort claim, it does not violate the eighth amendment. *Id.* at 106, 97 S.Ct. at 292; *Withers, v. Levine,* 615 F.2d at 162; *Wester v. Jones,* 554 F.2d 1285 (4th Cir.1977) (negligent diagnosis does not state eighth amendment claim).

■ By analogy, a personal injury resulting from a negligent act does not violate the eighth amendment merely because the victim is a prisoner. Like this court, the Fifth Circuit was troubled with

> bringing a case such as the accidental closing of a cell door on a prisoner's hand ... under the rubric of a cruel and unusual punishment, however negligent it may have been. The act may cause the

prisoner great pain and suffering, and be highly reprehensible, but what is lacking is a specific intent to be cruel.

. . . . .

The word *punishment,* too, implies a wrong in prison management, in contrast to the casual dereliction of a minor prison employee.

*Roberts v. Williams,* 456 F.2d at 827 (emphasis in original) (liability for cruel and unusual punishment upheld on basis of evidence demonstrating indifference to prisoners' safety). Unlike the Fifth Circuit in *Roberts,* however, there is no allegation in the case *sub judice* that plaintiff's alleged injury resulted from indifference to his safety. Instead, he alleges only that the defendant accidently shut the cell door on his hand, a casual omission not involving the sustained maintenance of a needlessly hazardous condition or a pervasive risk of harm.

■ Therefore, the court holds that the alleged negligent closing of a cell door on plaintiff's hand does not state a claim under the eighth amendment.[1] *Cf. Major v. Benton,* 647 F.2d 110, 113 (10th Cir.1981) (death resulting from negligent action of a state official does not itself raise a constitutional claim); *Patzig v. O'Neil,* 577 F.2d 841, 847–848 (3rd Cir.1978) (police officer's negligent failure to prevent arrestee from committing suicide did not violate substantive due process, which is analogous to the eighth amendment); *United States ex rel. Miller v. Twomey,* 479 F.2d 701 (7th Cir.1973) (single instance of negligence by prison official does not constitute cruel and unusual punishment), *cert. denied sub nom. Gutierrez v. Dep't of Pub. Safety,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974); *Meshkov v. Abington Township,* 517 F.Supp. 1280, 1285 (E.D.Pa.1981) (guards' negligent failure to monitor arrestee resulting in arrestee hanging himself did not state substantive due process claim because there were no allega-

tions that the defendants "were deliberately indifferent to the needs of the decedent at any time, or that there were any policies which were employed or acquiesced in by the defendants which showed a deliberate indifference to the [arrestee's] needs.") *Snyder v. Blankenship,* 473 F.Supp. 1208 (W.D.Va.1979) (personal injury resulting from negligent failure to repair a leaking dishwasher did not violate the eighth amendment as a matter of law because slip and fall injury is not comparable to a "prison-related" injury), *aff'd,* 618 F.2d 104 (1980).

### B. Procedural Due Process

In addition to plaintiff's eighth amendment claim, the allegations in his complaint can be construed to include a claim under the fourteenth amendment. "Liberty" within the meaning of the fourteenth amendment includes the right to be free from "unjustified intrusions on personal security." *Ingraham v. Wright,* 430 U.S. at 673, 97 S.Ct. at 1413. Analyzed in light of this principle, the alleged loss of the tip of plaintiff's finger resulting from the defendant's negligent conduct deprived plaintiff of "liberty." So, in ruling on defendants' motion to dismiss for failure to state a claim, the court must also determine whether plaintiff has been deprived of his liberty without due process of law in violation of the fourteenth amendment.

In deciding whether plaintiff's allegations are sufficient to state a claim for deprivation of liberty without procedural due process, the court is aided by the Supreme Court's decision in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The fourteenth amendment claim in *Parratt* was that prison officials negligently lost the plaintiff's hobby kit, thereby depriving him of his property without due process of law. But the Court held that, unless the deprivation was pursuant to an established state practice or procedure, *id.*

---

1. Nor was plaintiff's eighth amendment right violated by any deliberate indifference to his medical needs. As plaintiff himself admits, he was taken to a hospital for treatment immediately after the accident. And although it is

unfortunate that he did not receive pain medication until the next day, a one night delay in providing him with pain medicine did not constitute deliberate indifference to his serious medical needs.

at 541, 101 S.Ct. at 1916, the property loss was not "without due process of law" if the state provided the plaintiff with a means by which he could seek redress for the deprivation. *Id.* at 543, 101 S.Ct. at 1916. In other words, the Supreme Court held that the "negligent loss of a prisoner's property by a prison official was not a due process violation when the state provided an adequate postdeprivation remedy." *Palmer v. Hudson,* 697 F.2d 1220 at 1222 (4th Cir.1983). The Court concluded in *Parratt* that the existence of a state statutory tort remedy allowing inmates to recover against state prison officials for negligent loss of property satisfied the requirements of due process.

At least one court has held that the *Parratt* analysis applies "when only a *negligent* deprivation of *property* is involved." *Howse v. DeBerry Correctional Institute,* 537 F.Supp. 1177, 1178 (M.D.Tenn.1982). Indeed, there is support for that position in two of the concurring opinions in *Parratt.* Justice Blackmun, with whom Justice White concurred, did not read the Court's opinion "as applicable to a case concerning deprivation of life or of liberty," 451 U.S. at 545, 101 S.Ct. at 1918, or the Court to suggest that a state tort remedy "would cure the unconstitutional nature of a state official's intentional act that deprives a person of property." *Id.* at 545–546, 101 S.Ct. at 1918.

But "the separate opinions in *Parratt* [do not] give any persuasive basis on which to conclude that its holding does not encompass an intentional tort," *Palmer v. Hudson,* at 1222. Similarly, there is no logical reason why the *Parratt* analysis should not apply to "nonproperty deprivations that do not implicate substantive constitutional guarantees." *Irshad v. Spann,* 543 F.Supp. 922, 927 n. 1 (E.D.Va.1982). *Parratt's* underlying principle is that a postdeprivation hearing will satisfy the requirements of procedural due process when there is no practical way to provide a predeprivation hearing. 451 U.S. at 541, 101 S.Ct. at 1916; *Palmer v. Hudson,* at 1222; *Irshad v. Spann,* 543 F.Supp. at 926–927. If "a postdeprivation remedy can cure an uninten-

tional but negligent act causing injury [to property], inflicted by a state agent which is unamenable to prior review, then that principle applies as well to random and unauthorized intentional acts," *Palmer v. Hudson,* at 1223, and nonproperty deprivations.

Parratt, of course, did not restrict the availability of § 1983 as a remedy for constitutional wrongs. Instead, it held the constitutional requirement of procedural due process to be satisfied if the state provides a post facto remedy for an injury inflicted by an official which was not done pursuant to an established policy and was not amenable to prior control. Parratt does not impinge upon the right to a § 1983 remedy for an officially inflicted injury done pursuant to an established procedure, which remains a violation of the requirement of procedural due process, or for an official act which violates a substantive constitutional right, such as the right to vote, or for an official act which is sufficiently egregious to amount to a violation of the requirement of substantive due process.

*Id.* at 1222, n. 2 (citations omitted). The court thus holds that although the *Parratt* analysis is inapplicable to state actions that result in substantive constitutional violations, it applies to all state tort claims brought under section 1983 on procedural due process grounds. *See id.; Wolf-Lillie v. Sonquist,* 699 F.2d 864 (7th Cir.1983); *Henderson v. Counts,* 544 F.Supp. 149 (E.D.Va. 1982); *Irshad v. Spann,* 543 F.Supp. at 926.

As discussed *supra,* plaintiff's allegations fail to state a substantive constitutional claim. Plaintiff's procedural due process claim is based on the allegation that the deputy negligently deprived him of his liberty by closing a cell door on his hand. The defendant's alleged negligence was an isolated act of misconduct by a state official for which a predeprivation hearing would have been impracticable. Therefore, if Virginia law provides a meaningful postdeprivation remedy, plaintiff has not been deprived his "liberty" without due process of law within the meaning of the fourteenth

amendment. *See Jewell v. Foster*, C.A. No. 82–0438–R (W.D.Va. Aug. 30, 1982) (Kiser, J.); *Meshkov v. Abington Township*, 517 F.Supp. at 1286 (*Parratt* analysis applies to claim that police officers negligently allowed arrestee to hang himself); *accord Ingraham v. Wright*, 430 U.S. at 672, 97 S.Ct. at 1413 (common-law remedies are fully adequate to afford due process for corporal punishment in public schools which implicates a constitutionally protected liberty interest).

 Virginia law in effect when the alleged incident occurred provides *plaintiff* with a common-law action for negligence.[2] *Cf. Davis v. Moore*, 215 N.C. 449, 2 S.E.2d 366 (1939) (holding both a deputy and sheriff liable under tort law for the former's negligently closing a cell door on a prisoner's thumb). Thus, the question now is whether the common-law remedy constitutes an adequate state postdeprivation remedy so as to meet the requirements of procedural due process. The court holds that it does. Even assuming that the adequacy of a postdeprivation remedy depends on the absence of state sovereign immunity from suit, *see Frazier v. Collins*, 538 F.Supp. 603 (E.D.Va.1982); *Whorley v. Karr*, 534 F.Supp. 88 (W.D.Va.1981); *but see Irshad v. Spann*, 543 F.Supp. at 928–929; *Frazier v. Collins*, 544 F.Supp. 109, 110 (E.D.Va.1982), the court concludes that plaintiff's common-law remedy is adequate. Although sovereign immunity may exist for simple negligence, a state official may be held liable for negligently performing a ministerial duty. *Phelps v. Anderson*, 700 F.2d 147 at 149 (4th Cir.1983); *Semler v. Psychiatric Institute*, 538 F.2d 121, 127 (4th Cir.1976); *see James v. Jane*, 221 Va. 43, 267 S.E.2d 108 (1980); *Lawhorne v. Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973). As a general principle, the duties of a jailer are ministerial rather than discretionary, and liability may be imposed for the negligent performance of such duties. *See Smith v. Slack*, 125 W.Va. 812, 26 S.E.2d 387 (1943). Moreover, plaintiff alleges that his injury resulted from the deputy's negligence in closing a cell door too soon. The record indicates that the deputy was in the process of closing all the cell doors in the jail in preparing to feed the inmates their meals. Closing cell doors in such circumstances is clearly a ministerial rather than discretionary act as it involves no exercise by the jailer of "his own judgment upon the propriety of the act being done." *Dovel v. Bertram*, 184 Va. 19, 22, 34 S.E.2d 369, 370 (1945). Therefore, the court concludes that a Virginia court would not grant the deputy sovereign immunity in this case.

In summary, plaintiff possesses a postdeprivation remedy under state common-law which satisfies the due process clause of the fourteenth amendment. Thus, plaintiff has not been deprived of his liberty without due process of law. Plaintiff, therefore, must bring his negligence claim in state court in order to obtain compensation for his injury.

For the above reasons, the court will grant the defendants' motion to dismiss for failure to state a claim under section 1983. An appropriate order will be entered this day.

---

2. Virginia's newly enacted tort claims act, *see* Va.Code § 8.01–195.1 *et seq.* (Supp.1982), applies only to acts occurring on or after July 1, 1982.