David William GROVES

v.

J.D. COX, Supt., et al.

Civ. A. No. 80–0158–R.

United States District Court,
E.D. Virginia,
Richmond Division.

March 16, 1983.

David William Groves, pro se.

Guy W. Horsley, Jr., Asst. Atty. Gen. of Va., Richmond, Va., for defendants.

## OPINION AND ORDER

WARRINER, District Judge.

This matter is before the Court on remand from the Fourth Circuit Court of Appeals to consider whether, in light of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Commonwealth of Virginia provides a remedy for the property loss plaintiff asserts and, if so, whether the remedy provided satisfies procedural due process requirements. Plaintiff has charged that plaintiff's belongings held in safekeeping by defendants for plaintiff while plaintiff was in segregation were missing when he was returned to the general prison population; plaintiff claims damages under 42 U.S.C. § 1983 for a negligent deprivation of property.

By order entered 20 January 1982, defendants were directed to file their motion for summary judgment. Defendants filed a supplemental motion for summary judgment on 5 February 1982. On 19 February, the Court afforded plaintiff an opportunity to respond, which plaintiff failed to do. On 12 July, defendants filed a motion for summary judgment or, in the alternative, for abstention. By order entered 22 July, the Court afforded plaintiff an opportunity to respond, but plaintiff failed to do so. Defendants' motion for summary judgment is ripe for consideration.

In *Parratt v. Taylor, supra,* the Supreme Court recognized that where an inmate has suffered negligent deprivation of his property by a State employee and the loss is not the result of some established State procedure, a postdeprivation State tort remedy

may fully provide the process due under the Fourteenth Amendment. In *Parratt* the availability of a State remedy providing plaintiff with an opportunity to be heard, *id.* at 539–40, 101 S.Ct. at 1914–15, vitiated plaintiff's claim under § 1983 because plaintiff had not been deprived of his property without due process of law. *Id.* at 537, 101 S.Ct. at 1913.

The Nebraska statute [1] which the Court found satisfied procedural due process requirements in *Parratt* provides a right of action to persons who believe they have suffered tortious loss at the hands of the State. *Id.* at 543, 101 S.Ct. at 1916. The Virginia Tort Claims Act, Va.Code § 8.01–195.1 *et seq.* (Supp.1982), a roughly similar statute that entitles plaintiffs to sue the State for tortious property loss, went into effect on 1 July 1982. However, this new statute applies only to claims accruing on or after the effective date and cannot redress the alleged deprivation in this case. Thus, the Court must consider whether Virginia provided a remedy at the time of the deprivation that would redress plaintiff's asserted loss and, if so, whether such remedy satisfies procedural due process requirements.

Since *Parratt v. Taylor,* most district courts in Virginia have determined that the Commonwealth does provide a remedy for a deprivation of property such as plaintiff asserts: plaintiff could bring an action against defendants in State court for con-

version or detinue and be "fully compensated … for the property loss he suffered." [2] 451 U.S. at 544, 101 S.Ct. at 1917. *See Holmes v. Wampler,* 546 F.Supp. 500 (E.D. Va.1982); *Irshad v. Spann,* 543 F.Supp. 922 (E.D.Va.1982); *Frazier v. Collins,* 538 F.Supp. 603 (E.D.Va.1982); *Graham v. Mitchell,* 529 F.Supp. 622 (E.D.Va.1982); *Whorley v. Karr,* 534 F.Supp. 88 (W.D.Va. 1981).[3] The Fourth Circuit recently held that Virginia provides postdeprivation remedies that comport with due process. *Phelps v. Anderson,* 700 F.2d 147 (4th Cir. 1983).[4]

In *Graham v. Mitchell,*[5] *supra,* Judge Kellam found that plaintiff's available State Court remedies satisfied the requirements of due process. The Court based its finding on language in *Parratt,* citing *Ingraham v. Wright,* 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), stressing that the safeguard of a common law action in State court can be sufficient to meet due process.[6] As further support, Judge Kellam noted that a right of action for damages exists under the due process clause of the State constitution. Va. Const. art. I, § 11. Judge Kellam cited Virginia cases affirming the right of a party unlawfully or improperly deprived of property to enforce his constitutional right to compensation in a common law action. *See Burns v. Board of Supervisors of Fairfax County,* 218 Va. 625, 238 S.E.2d 823 at 325 (1977); *Morris v. Elizabeth River Tunnel District,* 203 Va. 196, 123 S.E.2d 398 (1962).

---

1. Neb.Rev.Stat. § 81–8,209 et seq. (1976).

2. As defendants note, a prisoner is free to waive the appointment of a committee, *Cross v. Sundin,* 222 Va. 37, 278 S.E.2d 805 (1981), and may proceed with an action without such appointment. Further, Section 14.1–183, Code of Virginia (1950), allows indigent prisoners to proceed *in forma pauperis* and to have counsel appointed under certain circumstances.

3. This proposition has been further supported in unpublished opinions of the district courts. *See Subica v. Reynolds,* No. 82–0025 (E.D.Va. March 22, 1982); *Subica v. Hutto,* No. 81–328 (E.D.Va. Nov. 17, 1981); *Carroll v. Stacey,* No. 81–0249 (W.D.Va. Oct. 28, 1981).

4. The opinion, however, did not address the concerns voiced by Judge Bryan in *Subica v. Hutto,* No. 81–328 (E.D.Va. Nov. 17, 1982) (un-

published), discussed *infra,* and is founded on a more confident understanding of what the pertinent Virginia law is than this Court can provide. *See* note 8, *infra.* The mandate given this Court to determine the adequacy of State remedies under due process has not been exhausted. See also discussion at note 10, *infra.*

5. *Graham v. Mitchell* was on remand from the Fourth Circuit for reconsideration, in light of *Parratt,* of the same questions that this Court must resolve.

6. Judge Kellam did not address the question of the effect of the sovereign immunity defense on the due process adequacy of this common law safeguard.

The district courts are not unanimous, however, in finding that the State remedies comport with due process. Judge Bryan, in *Subica v. Hutto,* No. 81–328 (E.D.Va. Nov. 17, 1982) (unpublished), concluded that the likely assertion in State court of sovereign immunity by defendant State penitentiary officers was too serious an impediment to a postdeprivation hearing to satisfy the requirements of due process. In *Subica* plaintiff inmate sued defendant officers under § 1983 alleging the negligent loss of his property, a pool cue. The Court decided to deny defendants' motion to dismiss, which was based on the availability of adequate State court remedies, unless defendants would represent to Judge Bryan that they would not raise the State's sovereign immunity defense. Judge Bryan indicated that for plaintiff to have State court remedies adequate to vitiate plaintiff's § 1983 action, the plaintiff must be "assure[d] of a reme-

dy"; the probable extension of sovereign immunity to these defendants would deprive plaintiff of his remedy. *Id.,* slip op. at 1–2. *See Subica v. Reynolds,* No. 82–0025 (E.D.Va. March 22, 1982) (unpublished) (vacating order granting summary judgment due to adequate State remedy because defendant would not represent he would waive sovereign immunity in an ensuing State action).

■ Indicating that the availability of sovereign immunity does bear on the adequacy of the State remedies, Judge Turk, in *Whorley v. Karr,* 534 F.Supp. 88 (W.D.Va. 1981) and *Carroll v. Stacey,* No. 81–0249 (W.D.Va. Oct. 28, 1981) (unpublished),[7] found the State remedy adequate where the defendants, city police officer and State prison officials respectively, would not be protected by the State's sovereign immunity.[8] Because sovereign immunity did not

7. In *Carroll v. Stacey,* an inmate brought a § 1983 action against a State prison official for negligent deprivation of the inmate's personal property, a stereo. Judge Turk found that because plaintiff could proceed against defendant in State court, as defendant could not raise the shield of sovereign immunity, that plaintiff had failed to state a claim under § 1983. The Court found that plaintiff had been deprived of his property with the amount of process due under *Parratt.*

8. In Virginia, a State employee who acts wantonly, in a culpable or grossly negligent manner, or beyond the scope of his employment cannot avail himself of the protection of the State's sovereign immunity. *James v. Jane,* 221 Va. 43, 282 S.E.2d 864, 869 (1980). The Virginia Supreme Court has also recognized that a State employee may be liable for an act within the scope of his authority but performed "so negligently" as to take him outside the protection of his employment. *Sayers v. Bullar,* 180 Va. 222, 22 S.E.2d 9, 12 (1942). However, when a State employee is charged with simple negligence, his immunity from suit depends on the function he was performing and the extent of the State's interest and involvement in the function. Id. To determine under *James v. Jane* whether an employee is immune from liability for his negligence, Virginia courts may look at several factors: whether the activity involved constitutes a governmental intrusion into formerly private areas, whether the act involves use of judgment and discretion, and the degree of control and direction exercised by the State over the employee. *Id.*

Virginia case law has extended the State's immunity to University of Virginia Hospital administrators and surgical interns, *Lawhorne v. Harlan,* 214 Va. 405, 200 S.E.2d 569 (1973), but not to physicians of the same institution, *James v. Jane,* 221 Va. 43, 282 S.E.2d 864 (1980); *see also Id.* at 115 (concurring opinion), or public high school teachers, *Crabbe v. County School Bd.,* 209 Va. 356, 164 S.E.2d 639 (1968). It has been noted that Virginia law on sovereign immunity is quite confused, *see* Taylor, *A Re-examination of Sovereign Tort Immunity in Virginia,* 15 U.Rich.L.Rev. 247, 256–61 (1980–81); this Court is uncertain whether defendants, State correctional officers, would be protected by sovereign immunity in a State court proceeding. Following the criteria set down by the majority in *James v. Jane, supra,* 282 S.E.2d at 869, the strong interest and involvement of the State in prison administration likely would result in the extension of sovereign immunity to these State agency employees. *See Subica v. Hutto,* No. 81–328 (E.D.Va. Nov. 17, 1981) (unpublished). On the other hand, following the principle approved in *Crabbe, supra* at 641–42; *accord, James v. Jane, supra* 282 S.E.2d at 871 (concurring opinion), or the discretionary-ministerial act distinction in *Lawhorne, supra,* 200 S.E.2d at 571; *see Phelps v. Anderson, supra,* sovereign immunity likely would not protect prison officials who negligently perform their duties.

The Fourth Circuit's recent decision in *Phelps v. Anderson,* 700 F.2d 147 (4th Cir. 1983), finding Virginia remedies to be adequate, was essentially premised on the understanding that Virginia sovereign immunity would not shield a

shield the defendants, Judge Turk determined that the State court provides plaintiff with a "meaningful opportunity . . . for a determination of rights and liabilities." *Whorley v. Karr,* 534 F.Supp. at 90.

The effect of a sovereign immunity bar to damages on the adequacy of State remedies was specifically addressed in *Irshad v. Spann, supra,* where sovereign immunity was the only impediment to plaintiff inmate's recovery in State court. *Id.* at 928. Judge Williams held that the possibility of a sovereign immunity defense for the correctional officers does not deprive plaintiff of due process in the State courts. *Id.* The Court noted that federal courts give State officials sued under § 1983 a qualified immunity, citing *Procunier v. Navarette,* 434 U.S. 555, 561–62, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978); *Wood v. Strickland,* 420 U.S. 308, 321–22, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975), that protects them from liability in their individual capacity for wrongs due to simple negligence, citing *Hughes v. Blankenship,* 672 F.2d 403, 406 (4th Cir.1982). "This federal immunity defense clearly does not violate due process. The due process standard applied to the federal government under the fifth amendment is identical to the standard imposed upon the states by the fourteenth amendment. [Citations omitted]. Thus, the Vir-

ginia immunity defense must comply with due process, because its federal counterpart does." *Irshad v. Spann,* 543 F.Supp. at 929. Judge Williams held that plaintiff had not stated a cognizable § 1983 claim because Virginia remedies meet the requirements of procedural due process despite the availability of a sovereign immunity bar; therefore, plaintiff must bring his negligence claim in State court. *Id.* Judge Williams restated this reasoning in *Frazier v. Collins,* 544 F.Supp. 109 (E.D.Va.1982).

The conclusion that due process would tolerate a State sovereign immunity defense because due process tolerates a federal qualified immunity defense in § 1983 actions does not squarely answer the concern Judge Bryan raised in *Subica v. Hutto* that the likelihood of receiving a remedy has some bearing on the adequacy of due process. Judge Bryan concluded specifically that if in *every* tort suit brought by a prisoner his remedy is barred because of sovereign immunity,[9] the right to a hearing would not satisfy the requirements of due process.

Upon careful consideration of the question, however, the Court cannot find that due process under *Parratt* requires any more than the provision of a hearing, *see* 451 U.S. at 544, 101 S.Ct. at 1917,[10] before a

---

ministerial act negligently performed, citing *Lawhorne v. Harlan, supra.* Under this reading, sovereign immunity would not bar a remedy in the case at hand; but in view of the 1980 decision in *James v. Jane,* which supersedes both *Crabbe* and *Lawhorne,* there is no way to confidently predict whether a defense of sovereign immunity would prevail in the case at hand, and this Court must seek other grounds for its decision.

9. *See* note 8, *supra.*

10. In *Phelps v. Anderson, supra,* the Court of Appeals ruled that the procedure afforded by Virginia's former grievance guideline, Number 846 (1977), which did not expressly permit a grant of monetary damage, comported with the requirements of due process under *Parratt v. Taylor, supra. Parratt* stated: "Although the state remedies may not provide the respondent with all the relief which may be available under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process. The remedies provided

could have fully compensated the respondent for the property loss he suffered." 451 U.S. at 544, 101 S.Ct. at 1917 (emphasis added).

It should be noted, however, that the Nebraska procedure, which the *Parratt* court found satisfied due process, evidently could fully compensate a loss, though it did not provide *punitive* damages. *Id.* It is less clear that a procedure that does not provide for monetary damages, as Virginia's Guideline 846 might not have, *see Phelps v. Anderson, supra,* is adequate. Further, as the Court of Appeals notes, *Phelps, supra,* at 149 n. 3, Congress has directed the states to promulgate new grievance guidelines under the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997, *et seq.* The Act authorizes federal courts to continue proceedings for 90 days to permit exhaustion of the administrative remedies, 42 U.S.C. § 1997e; the Act permits a continuance, not a cutting-off of the right of action under 42 U.S.C. § 1983. To the extent that the Court of Appeals bases its dismissal of Phelps' claim on the adequacy of the State grievance procedure alone, it ap-

body with authority to grant a remedy. In a fundamental statement on the issue, the Supreme Court said that "many controversies have raged about the cryptic and abstract words of the Due Process Clause, but there can be no doubt that at a minimum they require that deprivation of life, liberty, or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). "The Due Process Clause grants the aggrieved party the opportunity to present his case and have its merits fairly judged." *Logan v. Zimmerman,* 455 U.S. 422, 433, 102 S.Ct. 1148, 1156, 71 L.Ed.2d 265, 276 (1982). These statements of the requirements of due process simply make no reference [11] to the adequacy of the remedy afforded.

The Supreme Court's recent holding in *Logan v. Zimmerman,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982),[12] lends support to the conclusion that due process specifies the nature of the hearing, not of the remedy. In the situation reviewed in *Logan,* the plaintiff's State Fair Employment Practices Act (F.E.P.A.) claim was terminated because the State Commission failed to convene a hearing on the claim before the statutory deadline. The Commission's inaction effectively barred plaintiff forever from bringing his State created employment discrimination claim. The Supreme Court held that the State could not cut off plaintiff's constitutional right to an adjudicative hearing on his employment complaint by enforcing a "procedural" statute of limitations, *Id.* 455 U.S. at 433, 102 S.Ct. at 1156, 71 L.Ed.2d at 276. More

importantly in this context, the Court went on to state:

> Of course, the state remains free to create substantive defenses or immunities for use in adjudication—or to eliminate its statutorily created causes of action altogether—just as it can amend or terminate its welfare or employment programs. The Court held as much in *Martinez v. California,* 444 U.S. 277 [100 S.Ct. 553, 62 L.Ed.2d 481] (1980), where it upheld a California statute granting officials immunity from certain types of state tort claims. We acknowledge that the grant of immunity arguably did deprive the plaintiffs of a protected property interest. But they were not thereby deprived of property without due process, just as a welfare recipient is not deprived of due process when the legislature adjusts benefit levels. [Citations omitted]. In each case, the legislative determination provides all the process that is due....

*Id.*

Indeed, as was acknowledged also in *Martinez,* it may well be that a substantive "immunity defense, like an element of the tort claim itself, is merely one aspect of the State's definition of that property interest." 455 U.S. at 433, 102 S.Ct. at 1156, 71 L.Ed.2d at 276. *See also U.S. Railroad Retirement Board v. Fritz,* 449 U.S. 166, 174, 101 S.Ct. 453, 458, 66 L.Ed.2d 368 (1980). Other defenses that may bar recovery without vitiating due process safeguards are those of a statute of limitations on the initiation of suit, *Lindsey v. Normet,* 405 U.S. 56, 92 S.Ct. 862, 31 L.Ed.2d 36 (1976) (limitation of actions under wrongful

---

pears to undercut the statutory exhaustion provision. This Court does not reach the due process adequacy of the grievance guidelines in view of the disposition of the case on other grounds.

**11.** The requirement cited in *Mullane* of a "meaningful" opportunity to be heard, *see Boddie v. Connecticut,* 401 U.S. 371, 377, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971), means only that where access to the courts is afforded, the access cannot be unreasonably burdened. *See also Logan v. Zimmerman,* 455 U.S. 422, 429 n. 5, 102 S.Ct. 1148, 1154 n. 5, 71 L.Ed.2d 265, 274 n. 5 (1982).

The Supreme Court has repeatedly held that the Due Process Clause requires "*some* form of hearing," *Board of Regents v. Roth,* 408 U.S. 564, 570–571, 92 S.Ct. 2701, 2705, 2706, 33 L.Ed.2d 548 (1972) (emphasis in original); not, say, "*some* form of remedy." *See Bell v. Burson,* 402 U.S. 535, 541, 91 S.Ct. 1586, 1590, 29 L.Ed.2d 90 (1972).

**12.** The Supreme Court decided *Logan* after *Parratt* but prior to the district court decisions in *Subica* and *Irshad.*

detainer statute does not violate due process); *Logan v. Zimmerman Brush Co.,* *supra,* and of contributory negligence. These defenses are likewise "elements of the tort claim itself." *Martinez,* 455 U.S. at 433, 102 S.Ct. at 1156, 71 L.Ed. at 276. The Court cannot conclude that due process requires any more than the right to present a claim and be heard.[13]

Virginia's tort remedies provide plaintiff the opportunity for a fair hearing, notwithstanding the possibility that defendants' invocation of sovereign immunity will preclude plaintiff from securing relief. Thus, though the Court concludes that invocation of sovereign immunity to bar relief to potentially all prisoners claiming deprivation of property would largely vitiate the purpose of the hearing, the Court is constrained to find that Virginia's tort remedies satisfy procedural due process. Because adequate state remedies exist to adjudicate plaintiff's claim, plaintiff has failed to state a violation of the Fourteenth Amendment cognizable under § 1983. Accordingly, the Court will grant defendants' motion for summary judgment.

And it is so ORDERED.

---

13. Sovereign immunity, established in England in 1788, *Russell v. Men of Devon,* 100 Eng.Rep. 359, and first recognized in America in 1812, *Mower v. Leicester,* 9 Mass. 247, has been recognized as part of American common law and had widespread acceptance since ratification of the Eleventh Amendment in 1798. F.V. Harper & F. James, 2 *The Law of Torts* 1607 (1956). Congress was certainly aware of sovereign immunity in 1868 when through the Fourteenth Amendment Congress imposed due process requirements on the States.