BARRY AVIATION, INC., Plaintiff,

v.

LAND O'LAKES MUNICIPAL AIRPORT COMMISSION, Town of Land O'Lakes Wisconsin, Richard Peterson, individually and as a Land O'Lakes Supervisor, Henry Mitchell, individually and as a Land O'Lakes Town Supervisor, Michael Stopczynski Sr., individually and as a Land O'Lakes Town Supervisor, Ronald Ramesh, individually and as a Land O'Lakes Town Supervisor, Karl Kerscher, individually and as an Airport Commission Official, and James A. Bates, Defendants.

No. 02–C–0635–C.

United States District Court,
W.D. Wisconsin.

May 14, 2003.

Robert W. McIntyre, Cleveland, OH, for Plaintiff.

James A. Johnson, Johnson & Houlihan, S.C., Rhinelander, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for monetary relief in which plaintiff Barry Aviation, Inc. contends that defendants fraudulently induced it to enter into a contract to become a fixed-base operator at the Land O'Lakes Municipal Airport and, in doing so, (1) violated the Wisconsin Organized Crime Control Act, Wis. Stat. § 946.83; (2) violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961; (3) committed common law fraud; (4) destroyed public records in violation of Wis. Stat. § 946.72; (5) committed a civil conspiracy to defraud; (6) violated plaintiff's rights to due process and equal protection; and (7) breached the parties' contract by failing to observe the covenants of good faith and fair dealing. In addition, plaintiff contends that defendants violated the express terms of their contract by allowing non-qualified personnel to perform airplane maintenance and by failing to maintain and replace the aviation fuel system and underground tanks.

Presently before the court is defendants' motion to dismiss. Although defendants assert a myriad of grounds for dismissal of plaintiff's complaint, I need determine only three issues. First, as a preliminary matter, I conclude that plaintiff has failed to plead its allegations of fraud with the particularity required under Fed.R.Civ.P. 9(b). Second, even if plaintiff had met the pleading requirements of Rule 9(b), it has failed to state a claim upon which relief can be granted as to its RICO and § 1983 claims. Thus, defendants' motion to dismiss will be granted as to plaintiff's federal claims. Typically, plaintiff would be given leave to amend to cure its Rule 12(b)(6) pleading deficiencies as to its federal claims. However, because it is clear from the complaint that the statute of limitations has run on plaintiff's RICO and § 1983 claims, any amendment as to these claims would be futile. Finally, because the only remaining claims are state law claims and plaintiff has failed to establish diversity jurisdiction (plaintiff alleged only its principal place of business and not its state of incorporation), defendants' motion to dismiss will be granted as to the state law claims for lack of subject matter jurisdiction.

For the sole purpose of deciding defendants' motion to dismiss, plaintiff's allegations in the complaint are accepted as true.

## ALLEGATIONS OF FACT

Plaintiff Barry Aviation, Inc. is a corporation with its principal place of business in West Palm Beach, Florida. (Although defendants pointed out that plaintiff failed to allege its place of incorporation in its complaint, plaintiff has remained silent on the issue.) Defendant Land O'Lakes Municipal Airport Commission is a political subdivision established under Wisconsin law for the exclusive purpose of governing, administrating and managing the municipal airport. Defendant Town of Land O'Lakes is a municipality located in Vilas County, Wisconsin. (For simplicity, I will refer to defendant Town of Land O'Lakes as defendant Town and defendant Land O'Lakes Municipal Airport Commission as defendant Commission.) Defendants Richard Peterson, Henry Mitchell, Michael Stopczynski Sr., Ronald Ramesh, Karl Kerscher and James A. Bates are officials either elected or appointed by defendant Town or defendant Commission.

In 1992, plaintiff investigated starting an aviation business known as a fixed-base operation. A fixed-base operator generally sells and rents aircraft, operates charters, repairs

airplanes and avionics and provides fuel services and aircraft storage facilities at public airports. Plaintiff's investigation focused on several public airports located in Michigan's upper peninsula and north central Wisconsin, including the Land O'Lakes Airport.

In 1993, plaintiff's principal, Timothy Barry, attended a public meeting held by defendants Town and Commission. At that meeting, Barry met defendant Kerscher, who was the manager of the airport and head of the town's airport committee. Plaintiff also met "other" defendants at this meeting. (I have used quotation marks to highlight instances in which plaintiff has failed to plead its claims of fraud with the particularity required under Rule 9(b).) During the meeting, "defendants" represented to plaintiff: (1) there were plans for substantial redevelopment of the airport in the future; and (2) the airport had in excess of 10,000 general aviation "operations" a year. (The Federal Aviation Administration defines an "operation" as the arrival or departure of an aircraft from an airport.) Future development included the acquisition of substantial government funding through funds provided by: (1) the FAA for airport improvement (as administered by the Wisconsin Department of Transportation); and (2) the state of Wisconsin (as funded directly through Wisconsin DOT). The funds were to be used for land acquisition, runway reconstruction, lights and approach obstruction removal.

Plaintiff was given the Airport Master Record (FAA Form OMB 2120–0015), which was prepared by the FAA on the basis of information provided to the FAA from the "[d]efendants acting as and through the Town and the Commission." The Airport Master Record show that the airport had a total of 10,000 operations in the 12–month period ending September 13, 1991.

Plaintiff was given defendant Town's March 10, 1993 Project Statement, which was prepared for the Wisconsin DOT and the FAA for the purpose of obtaining state and federal capital improvement funds for the airport. Defendant Town represented and certified in the Project Statement that 11,000 operations took place at the airport for the 12–month period ending July 1993.

"Additional representations were made to Plaintiff that certain terms and covenants would be provided in an anticipated public contract for [fixed-base operations] to protect Plaintiff from unfair competition at the Airport."

On June 15, 1993, on the basis of "the written materials provided and the representations of Defendants in all of their various capacities," plaintiff entered into a fixed-base operator contract with defendants Town and Commission. Under the 20–year contract, the parties "contemplated" that plaintiff would make substantial investments that would be recovered as a result of the volume of operations over a "period of years."

During the first two years under the contract, plaintiff renovated and expanded the operations center and hangar; established a first-class aircraft maintenance facility, flight school and fuel sales operation; and sold, chartered and rented aircraft on a 12–month basis. Plaintiff purchased 18 new and used airplanes, all of which were located at the airport. Plaintiff brought the U.S. National Glider Aerobatic Championships to the airport for two successive years. In addition, plaintiff was selected "for a repeat award of this important competition as a possible preview for the World Championships at a future date."

Despite plaintiff's $1.5 million-plus investment in the facilities, equipment, aircraft and capital as well as its full efforts to start, build and improve its fixed-base operations, the airport experienced "an unexpected and unprecedented low level of business" during the years "1993 through 2001." Plaintiff brought these "material deviations from the operations" to the attention of "defendants" at "various times" during this "time period." In response to plaintiff's inquiries, "defendants" represented that the lower than expected operations were caused by plaintiff's actions and inactions, its methods of operation, its personnel and the seasonal nature of the airport's operation in northern Wisconsin.

"Defendants" assured plaintiff that the FAA and Wisconsin DOT would "approve funding for substantial improvement con-

struction in 1999 and 2000" and that the "applications for this funding had been made and approvals were received."

In 1997 and 1998, defendants Town and Commission sought $2.5 million in federal funds and $180,000 in state funds for airport construction costs.

The materials "defendants" provided to the FAA and Wisconsin DOT certified that 11,-200 operations took place at the airport in 1997. Plaintiff's operations during "this time period" were not consistent with "defendants"' submissions to the FAA and Wisconsin DOT. In 2000, plaintiff made additional inquiries of "defendants," asking for the public records on which they had based the FAA and Wisconsin DOT submissions. "Defendants" provided plaintiff with the "same materials" they had provided plaintiff when it initially contracted for the fixed-base operations.

In 2000, while cleaning a portion of the basement of the airport terminal that had been under the prior continuous control of "defendants," plaintiff discovered an unmarked file cabinet that contained official airport records from 1985 through 2000. The records contained the original operations logs both prepared and kept by "defendants." The records demonstrate that the operation numbers provided to plaintiff, the FAA and the Wisconsin DOT were "well over 2000% the actual amount of operations performed by the [a]irport in the relevant years." The existence of these records was brought to the attention of "defendants" by way of a personal visit and by way of a letter to defendants Town's and Commission's lawyers. The original logs were returned to defendants' counsel. In May 2002, the file cabinet and its contents disappeared from the basement of the airport terminal.

## OPINION

### A. Pleading Fraud with Particularity

■ Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus, when alleging fraud, a plaintiff is required to provide "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992) (citations omitted); *see also Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir.1992). As the court of appeals has held repeatedly, "plaintiff must plead the 'who, what, when, and where' of the alleged fraud." *Uni\*Quality*, 974 F.2d at 923. "Rule 9(b)'s particularity requirement serves an important purpose because accusations of fraud can seriously harm a business. This is especially so in RICO cases where those accusations of fraud lead to the probably more damaging accusation that the business engaged in 'racketeering.'" *Id.* at 924. "Rule 9(b) ensures that a plaintiff have some basis for his accusations of fraud before making those accusations and thus discourages people from including such accusations in complaints simply to gain leverage for settlement or for other ulterior purposes." *Id.*

Plaintiff's complaint falls far short of compliance with Rule 9(b). As defendants point out, plaintiff lumps all defendants together and fails to provide many specifics, making it impossible for any one defendant to respond to plaintiff's claims of misrepresentation. *See Grove Holding Corp. v. First Wisconsin National Bank*, 803 F.Supp. 1486, 1511 (E.D.Wis.1992) (" 'Courts have been quick to reject pleadings in which multiple defendants are "lumped together" and in which no defendant can determine from the complaint which of the alleged misrepresentation[s] it is specifically charged with having made, nor the identity of the individual by whom and to whom the statements were given, nor the situs and circumstances of the conversation, nor ... the date of the utterance.' ") (quoting *McKee v. Pope Ballard Shepard & Fowle Ltd.*, 604 F.Supp. 927, 930–31 (N.D.Ill.1985)). Moreover, although plaintiff seems to allege in its complaint separate and repeated instances of fraud, plaintiff states in its brief that "plaintiff has therefore established, through its complaint, when and where the representations took place; 1) in 1993, 2) at a Land O'Lakes Town Meeting." *See* Plt.'s Resp., dkt. # 18, at 10. This statement does

not support a claim of repeated instances of fraud. Plaintiff alleged in its complaint that "defendants" filed a number of false statements with the Wisconsin Department of Transportation and Federal Aviation Administration or made false representations to these agencies. *See* Plt.'s Cpt., dkt. # 2, at ¶ 23 and 24. With no identification of which defendants made the false statements, or when or what was false about them, plaintiff's allegations do not supply the information necessary to state a claim of fraud. Reading plaintiff's complaint and brief, it is unclear how many instances of fraud plaintiff is alleging.

In another example of imprecision, plaintiff argues in its brief that defendant Kerscher was the "principal spokesperson" for defendants at this meeting. However, this is not what the complaint says. Rather, plaintiff alleges that "defendants represented to plaintiff" various facts at the meeting. Other instances of vagueness abound. For example, in paragraphs 11 and 12 of the complaint, plaintiff alleges that it was given the Airport Master Record or the Project Statement (it is unclear who gave these to plaintiff and when); in paragraph 13, plaintiff alleges that "additional representations were made" (it is unclear who made these representations, what they were and how they are relevant); and in paragraph 20, plaintiff alleges that it was "further assured by [d]efendants" that applications had been made for funding and that "approvals were received" from the FAA and Wisconsin DOT (again, it is unclear which defendants assured plaintiff that applications had been made, which defendants assured plaintiff that approvals were received and how this allegation relates to plaintiff's claim of fraud). Finally, plaintiff's nebulous allegations surface even in what appears to be the meat of its complaint. To illustrate, in paragraph 18, plaintiff alleges that from "1993 through 2001" the airport experienced "an unexpected and unprecedented low level of business" and that plaintiff brought these "material deviations from the operations" to the attention of "defendants" at "various times" during this "time period."

Plaintiff's allegations fail to answer the required "who, what, where and when" in many respects. *See Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir.1999) ("To state a claim with the required particularity, a complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.") (internal quotation omitted.). Plaintiff's brief does little to clarify its complaint and, in fact, in many instances adds to the confusion by contradicting allegations made in its complaint.

■ One last pleading issue needs to be addressed. Citing *Payton v. Rush–Presbyterian St. Luke's Medical Center*, 184 F.3d 623, 625 (7th Cir.1999), plaintiff argues that its § 1983 claims need not be pleaded with particularity. This is incorrect. In *Payton*, the plaintiff alleged that two special police officers used *excessive force* in violation of due process and equal protection. *Id.* at 624–25. In this lawsuit, plaintiff alleges that defendants committed *fraud* in violation of due process and equal protection. In holding that Rule 8(a) applied to the § 1983 claims alleged in *Payton*, the court of appeals stated explicitly that "[h]eightened pleading standards have fared poorly *outside* the Rule 9(b) context." *Id.* at 627 (emphasis added). In this case, plaintiff's allegations land squarely *inside* Rule 9(b). Plaintiff alleges fraud and for that reason its complaint is subject to a heightened pleading requirement. Rule 9(b) does not make exceptions for claims of fraud brought pursuant to § 1983. *See* Fed. R. Civ. P. 9(b) ("In *all* averments of fraud ... the circumstances constituting the fraud ... *shall be* stated with particularity.") (Emphasis added).

## B. *Federal Claims*

Notwithstanding plaintiff's Rule 9(b) pleading deficiencies, defendants argue that plaintiff has failed to state a claim upon which relief can be granted under Rule 12(b)(6) as to its RICO and § 1983 claims. I agree.

### 1. *Section 1983*

Plaintiff alleges that defendants fraudulently induced it to enter into a public contract, which amounts to an unconstitutional taking of plaintiff's property in violation of due process and equal protection under 42 U.S.C. § 1983. Although defendants raised a question in their brief about the existence of an equal protection claim, plaintiff said nothing in its responsive brief to explain how such a claim factors into its allegations. Thus, plaintiff has waived this claim. *See Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir.1999) ("Arguments not developed in any meaningful way are waived.").

■ Defendants argue next that plaintiff's due process claim cannot be pursued in federal court under § 1983 because of the availability of state law remedies. *See Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (as long as state remedies are available, neither intentional nor negligent deprivation of property gives rise to constitutional violation); *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (federal courts must consider adequacy and availability of state law remedies before concluding that violation of procedural due process has occurred). In fact, defendants point out that it is abundantly clear that state law remedies exist given the number of them asserted by plaintiff in this lawsuit.

Citing *Wolf–Lillie v. Sonquist*, 699 F.2d 864, 871 (7th Cir.1983) *Owen v. Lash*, 682 F.2d 648, 651 (7th Cir.1982), and *Irshad v. Spann*, 543 F.Supp. 922 (E.D.Va.1982), plaintiff argues that the availability of state law remedies is irrelevant because it is alleging a deprivation of *substantive* due process, not *procedural* due process. (Although plaintiff pleaded both a violation of "due process" and "substantive due process," *see* Plt.'s Cpt., dkt. 2, at ¶ 62, its current argument acts as a waiver of any procedural due process claim. *See Central States*, 181 F.3d at 808.) In *Irshad*, 543 F.Supp. at 926, the court concluded that the plaintiff had alleged a procedural due process violation and that state law provided adequate post-deprivation remedies.

Therefore, this case does nothing to support plaintiff's substantive due process argument. In *Wolf–Lillie* and *Owen*, the plaintiffs alleged an *independent* constitutional violation as part and parcel of their substantive due process claim. *See Wolf–Lillie*, 699 F.2d at 872 (Fourth Amendment violation); *Owen*, 682 F.2d at 650 (First Amendment violation); *see also Irshad*, 543 F.Supp. at 926 ("If the plaintiff in *Parratt* had alleged a violation of a substantive constitutional guarantee, such as the fourth or eighth amendment, he would have stated a cognizable cause of action under section 1983. The fact that an adequate state remedy exists for a substantive due process claim does not remove the constitutional question from that claim."). Without an independent constitutional violation (and plaintiff has not alleged one), plaintiff must show that the alleged tort is a fundamental right implicating the substantive constitutional guarantees found in the Fourteenth Amendment itself. *See Washington v. Glucksberg*, 521 U.S. 702, 720–721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); *Khan v. Gallitano*, 180 F.3d 829, 833 (7th Cir.1999); *Contreras v. City of Chicago*, 119 F.3d 1286, 1294–95 (7th Cir.1997).

In *Khan*, 180 F.3d at 830, the plaintiff alleged tortious interference with a contract under § 1983, arguing a substantive due process violation. The Court of Appeals for the Seventh Circuit held that the plaintiff failed to show "why the right to be free from tortious interference is a fundamental right deeply rooted in our history and tradition or implicit in the concept of ordered liberty" or "why having a state-law remedy for whatever injury the defendants caused her is inadequate under the federal constitution." *Id.* at 835. In this case also, plaintiff has failed to make such a showing. *See also Contreras*, 119 F.3d at 1295 ("Because we are reluctant to undermine established Supreme Court precedent requiring plaintiffs complaining of arbitrary deprivations of their property to seek redress through state remedies ... we have insisted on a 'disciplined jurisprudence' for such claims. Thus, a plaintiff bringing a substantive due process claim predicated on a deprived property interest must show 1) that the state's decision was arbitrary and

irrational, and 2) that the state committed a separate constitutional violation or that state law remedies are inadequate.") (Internal quotations and citations omitted.) Accordingly, plaintiff's substantive due process and equal protection claims brought pursuant to § 1983 will be dismissed for failure to state a claim upon which relief can be granted.

## 2. *RICO Claim*

■ The elements of a Racketeer Influenced and Corrupt Organizations Act violation are "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Specifically, the RICO statute defines "racketeering activity" as:

(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under [an extensive list of code provision under Title 18 of the United State Code]; (C) any act which is indictable under [an extensive list of code provision under Title 29 of the United State Code], (D) any offense involving fraud connected with a case under title 11 (except a case under section 157 of this title), fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), punishable under any law of the United States, (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act, (F) any act which is indictable under the Immigration and Nationality Act, [list of provisions] or (G) any act that is indictable under any provision listed in section 2332b(g)(5)(B);

■ 18 U.S.C. § 1961(1). Defendants argue that none of plaintiff's alleged federal statutory violations are found within RICO's definition of racketeering activity and its state law claims do not come close to the violent acts articulated in the statute. *See* 18 U.S.C. § 1961(1)(A). In response, plaintiff cites *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016 (7th Cir.1992), arguing that a violation need not be found within RICO's enumerated predicate acts in order to fall within RICO. In *Midwest Grinding*, the Court of Appeals for the Seventh Circuit held that although telling a lie or committing perjury is not a per se violation of RICO, if the plaintiff could show that the defendants' lies constituted mail fraud, wire fraud or obstruction of justice (which are enumerated predicate acts under RICO), the cover-up acts of lying "theoretically serve as predicate acts." *Id.* at 1022. Plaintiff argues that it has pleaded various violations of federal law including "false and fictitious claims to the government" and "embezzlement by a government employee." However, plaintiff fails to point to a single federal statute enumerated in RICO that provides the link to a predicate act of racketeering activity in this case. Accordingly, plaintiff has failed to state a claim upon which relief can be granted as to its RICO claim. As a result, it is unnecessary to determine whether plaintiff's failed to allege a "pattern" of racketeering activity.

## 3. *Statute of Limitations*

■ Typically, a dismissal under Rule 12(b)(6) is not final or on the merits and a court will give plaintiff leave to file an amended complaint. *See* Wright & Miller, 5A *Federal Practice and Procedure* § 1357 (1990). However, a dismissal without leave to amend is proper if the complaint cannot be saved with any amendment. *See id.* ("Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim."); *see also Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir.2002) (same); *Cruz v. Gomez*, 202 F.3d 593, 597–98 (2d Cir.2000) (same). In this case, I will dismiss plaintiff's federal claims without leave to amend because, even construing all well-pleaded facts as true and drawing all inferences in favor of plaintiff, I am persuaded that plaintiff's RICO and § 1983 claims have been brought outside the statute of limita-

tions and, thus, any amendment would be futile.

Civil claims brought under RICO have a four-year statute of limitations. *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* 483 U.S. 143, 152, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (Clayton Act's four-year statute of limitations applies to civil RICO claims). Civil rights claims brought under § 1983 have a six-year statute of limitations. *Gray v. Lacke,* 885 F.2d 399, 407–09 (7th Cir.1989) ("federal courts sitting in Wisconsin should apply Wisconsin's six-year personal rights statute of limitations [Wis. Stat. § 893.53] to § 1983 actions"). Plaintiff filed its complaint on November 22, 2002.

Plaintiff alleges that defendants fraudulently induced it to enter into a contract on June 15, 1993, by misrepresenting the number of operations at the airport. However, plaintiff admits that it suffered "an unexpected and unprecedented low level of business" during the years "1993 through 2001" and that it brought these "material deviations from the operations" to the attention of "defendants" at "various times" during this same "time period." *See* Plt.'s Cpt., dkt. # 2, at ¶ 18. Although this allegation leaves many questions unanswered, one thing is clear: plaintiff knew and reported these "material deviations from the operations" to defendant as early as 1993. As a result, the four-year statute of limitations on plaintiff's RICO claim expired in 1997 and the six-year statute of limitations on plaintiff's § 1983 claims expired in 1999. It is of no importance that plaintiff learned more facts to support its theories of liability over the years. *See McCool v. Strata Oil Co.,* 972 F.2d 1452, 1464 (7th Cir.1992) (statute of limitations begins to run for a civil RICO violation when plaintiff knew or should have known that he was injured); *see also* Wis. Stat. § 893.53 ("action to recover damages for an injury to the character or rights of another, not arising on contract, shall be commenced within 6 years after the cause of action accrues"); *Hansen v. A.H. Robins, Inc.,* 113 Wis.2d 550, 335 N.W.2d 578 (1983) (adopting discovery rule; claim accrues on date of injury or with reasonable diligence date injury should have been discovered). Accordingly, plaintiff's

federal claims will be dismissed without leave to amend.

### C. *Subject Matter Jurisdiction*

■ Plaintiff alleges in its complaint only its principal place of business (West Palm Beach, Florida) and not its state of incorporation. Although defendants pointed out this pleading deficiency in their brief in support of their motion to dismiss, plaintiff failed to provide the missing information in its response. *See NLFC, Inc. v. Devcom Mid–America, Inc.,* 45 F.3d 231, 237 (7th Cir.1995) (party seeking to invoke jurisdiction bears burden of supporting its jurisdictional allegations by "competent proof"). Because plaintiff's federal claims will be dismissed and plaintiff has failed to establish diversity jurisdiction, 28 U.S.C. § 1332, this court lacks subject matter jurisdiction over plaintiff's state law claims. Accordingly, the state law claims will be dismissed.

### ORDER

IT IS ORDERED that

1. Defendants' motion to dismiss plaintiff Barry Aviation, Inc.'s equal protection, due process and Racketeer Influenced and Corrupt Organizations Act claims is GRANTED without leave to amend for plaintiff's failure to state a claim upon which relief can be granted;

2. Defendants' motion to dismiss plaintiff's state law claims is GRANTED for lack of subject matter jurisdiction; and

3. The clerk of court is directed to enter judgment in favor of defendants and close this case.