Robert L. METTS, Plaintiff,

v.

THE UNIVERSITY OF NEVADA–
RENO, Defendant.

No. CV–N–03–0297–LRH(VPC).

United States District Court,
D. Nevada.

Feb. 5, 2004.

Lynn Pierce, Reno, NV, Gail Flatt, Pro Hac Vice Firm, Santa Rosa, CA, for Plaintiff.

Mary Dugan, University & Community College System of Nevada, Reno, NV, for Defendant.

## ORDER

HICKS, District Judge.

■ Several motions are presently before the Court. On July 21, 2003, Defendant "University of Nevada Reno" (the "University" or "UNR") filed a Motion to Dismiss and Quash Attempted Service of Process (Docket No. 11/12). Defendant argues that its motion should be granted pursuant to Federal Rules of Civil Procedure 4(j)(2) and 12(b)(1), (2), (5), and (7), as the UNR is not a legal entity capable of being sued. Subsequently, the Plaintiff filed an opposition to Defendant's motion (Docket No. 14/15) concurrently with a Motion to Amend Complaint (Docket No. 16). In these pleadings, the Plaintiff concedes that UNR is not an entity capable of being sued, and requests this Court grant leave to amend the complaint so that it names the University and Community College System of Nevada as the proper defendant. Defendant then filed a Reply to Opposition to the Motion to Dismiss and Quash Attempted Service of Process (Docket No. 17) and an Opposition to Motion to Amend Complaint (Docket No. 18). As well as again asserting that the UNR is not an entity subject to suit, the Defendant's opposition argues that Plaintiff's motion to amend should be dismissed on the grounds that amendment of the complaint is futile, as Plaintiff did not timely exhaust his administrative remedies and Plaintiff's complaint is barred by the statute of limitations. Opposing this argument, Plaintiff submitted a reply brief in support of his motion to amend (Docket No. 19). As it would otherwise be appropriate in the interest of justice to grant Plaintiff's motion to amend, *see Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Court must consider whether Plaintiff has failed to meet the filing deadlines imposed by the administrative agencies or the statute of limitations. If the Plaintiff's complaint is untimely, then the Court need not grant leave to amend, as amendment would be futile. *See Allen v. City of Beverly Hills,* 911 F.2d 367, 373 (9th Cir.1990) (holding that the futility of amendment is one of several reasons a court may deny a motion for leave to amend).

The timeliness question posed by the parties hinges on a determination of which action, in a series of acts by UNR personnel between November 15, 2000 and May 30, 2001, is the "discriminatory employment decision" upon which this claim is brought. The relevant facts are as follows: In September 2000, the Plaintiff applied with the UNR for a promotion to full professor. On November 15, 2000, the dean of the College of Business Administration, Dean Reed, wrote to Vice President Dave Westfall to inform him that the full professors of the department as well as the department chair had voted against the Plaintiff's application, and that Dean Reed could not support the Plaintiff's application. The Plaintiff was informed of this communication and provided a copy of the letter to Vice President Westfall on November 17, 2000. At this time, Dean Reed also indicated to Plaintiff that he was not supporting his application for promotion and would not forward the application to the University. However, Dean Reed informed the Plaintiff that he could request reconsideration of his application. At some point after receiving the Dean's letter, the Plaintiff availed himself of the University's reconsideration process. On February 5, 2001, Dean Reed again wrote to Vice President Westfall to inform him that the review of Plaintiff's application resulted in a unanimous denial of the promotion and that he again would not support the application. On May 15, 2001, Westfall wrote to Plaintiff informing him that his application for promotion had been reconsidered and denied. Finally, on May 30, 2001, University President Stephen

McFarlane wrote the Plaintiff informing him that, after reviewing the application and the recommendations of the other university personnel involved, he could not recommend the Plaintiff's application for promotion. The Plaintiff then filed an administrative charge with the Equal Employment Opportunity Commission (the "EEOC") on January 28, 2002, alleging violations by the University of the Americans with Disabilities Act (the "ADA") and the Rehabilitation Act. On March 10, 2003, the Plaintiff received a Right to Sue Letter from the EEOC, entitling him to bring a civil action against the University. Plaintiff filed his complaint on June 4, 2003.

■ Before a plaintiff may bring suit against an entity for violations of the ADA and/or the Rehabilitation Act, he must file a charge with the appropriate state agency (in this case the Nevada Equal Rights Commission) and the EEOC. The administrative charge with the EEOC must be made within 300 days of the alleged discriminatory act. 42 U.S.C. § 12117(a), 42 U.S.C. § 2000e–5(e)(1), *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1174–75 (9th Cir.1999). Moreover, the statute of limitations for claims brought under the Rehabilitation Act and the ADA is two years. *Wilson v. Garcia*, 471 U.S. 261, 276–80, 105 S.Ct. 1938, 1947–49, 85 L.Ed.2d 254 (1985); *Tahoe–Sierra Preser-*

*vation Council, Inc. v. Tahoe Reg'l Planning Agency*, 216 F.3d 764, 786 (9th Cir. 2000), N.R.S. 11.190(4)(e). The Defendant asserts that the relevant administrative and statute of limitations period began to run on November 15, 2000, while Plaintiff insists that May 30, 2001 is the date from which the time for filing an administrative charge and complaint began to run.

The Defendants cite *Delaware State College v. Ricks* for the proposition that the filing time limitations period begins to run from the date an employment decision is made, rather than the date that an internal grievance procedure is completed. 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). According to Defendants, the November 15, 2000 letter from Dean Reed constituted the employment decision which is the subject of this lawsuit, and Plaintiff's subsequent attempts to gain the promotion through reconsideration procedures did not toll the running of the limitations periods. *See Ricks*, 449 U.S. at 261, 101 S.Ct. 498, 506 (holding that "... the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods.") (internal citations omitted). However, Plaintiff argues that the relevant date from which to determine the limitations period is the day he received the letter from the University's president, indicating the University's final decision not to promote him.[1]

---

**1.** Indeed, in *Ricks*, the Supreme Court details the decisions made by various committees leading up to the ultimate decision not to grant the plaintiff tenure:

> By June 26, the tenure committee had twice recommended that Ricks not receive tenure; the Faculty Senate had voted to support the tenure committee's recommendation; and the Board of Trustees formally had voted to deny Ricks tenure. In light of this unbroken array of negative decisions, the District Court was justified in concluding that the College had established its official position—and made that position apparent to Ricks—no later than June 26, 1974.

449 U.S. at 262, 101 S.Ct. 498. As with the instant case, various committees and other authorized individuals refused to "recommend" or "support" the plaintiff's application for tenure. On March 13, 1974, the College Board of Trustees formally voted to deny tenure to Ricks, though in May the College's Educational Policy Committee held a hearing on the matter pursuant to a grievance Ricks had filed. Nonetheless, on June 26, 1974, Ricks was offered a 1–year "terminal" contract. *Id.* at 252–53, 101 S.Ct. 498. It was this June 26th contact which the Supreme Court determined constituted the discriminatory employment decision from which the statute of limitations began to run.

The Court concludes that there is sufficient evidence to create a reasonable issue of fact, so that denying Plaintiff's motion to amend would be a miscarriage of justice. According to the "University and Community College System of Nevada CODE," (hereinafter "U.C.C.S.N.Code") which was provided as an exhibit by the Defendant, the president of the University must approve all recommendations concerning promotion. *See* U.C.C.S.N.Code § 5.2.2 (Opp'n, Ex. D). Moreover, if an applicant requests reconsideration, "[f]inal action [is] taken within a reasonable time by the president after receipt of the recommendations ....." U.C.C.S.N.Code § .5.2.4. (*Id.*) It appears that, with regard to promotion decisions, the only applications which are not reviewed by the president are those of unsuccessful applicants who do not seek reconsideration. However, the president is the final decision-maker with regard to successful applicants for promotion and with regard to unsuccessful applicants who seek reconsideration. Plaintiff falls into this latter category.

In *Abramson v. University of Hawaii,* the Ninth Circuit considered a similar question regarding whether a failure to reconsider an employment decision constitutes an act of discrimination separate from the initial employment decision. 594 F.2d 202 (9th Cir.1979). The Court noted that there were two ways in which a university might be liable for a discriminatory refusal to reconsider the denial of tenure: 1) failure to reconsider could constitute an additional discriminatory act; or 2) failure to reconsider could constitute the final decision to deny tenure. *Id.* at 209 (citing *Weise v. Syracuse University,* 522 F.2d 397 (2d Cir.1975)). The first part of this observation is echoed in the Supreme

Court decision cited by both parties, in which the Court stated that even where a tenure decision was made earlier, the limitations period will commence at the date of a discharge occurring as a result of the tenure decision if the "manner in which the ... employment was terminated differed discriminatorily from the manner in which the [employer] terminated other professors who also had been denied tenure." *Ricks,* 449 U.S. at 258, 101 S.Ct. 498. The Ninth Circuit clarified the second way in which a university might be liable for a refusal to reconsider tenure, adding:

> "... [W]hen requests for reconsideration are an ordinary and generally accepted part of the tenure decision process, a presidential refusal to overturn a departmental denial of tenure can be considered as The final denial of tenure."

*Abramson,* 594 F.2d at 209. *See also Harris v. Ladner,* 127 F.3d 1121, 1125 (D.C.Cir.1997) (denying a motion to dismiss based on the argument that the statute of limitations had run since the time plaintiff was denied tenure, finding that "the reconsideration [process] may have been a continuation of the original application process").

As denying Plaintiff's motion to amend based on a determination that amendment would be futile has the effect of granting a motion to dismiss the Plaintiff's claims with prejudice, this Court construes all pleaded facts in the complaint as true and draws all inferences in favor of the Plaintiff.[2] Although the Plaintiff's complaint is unclear as to which theory the Plaintiff seeks to assert liability, sufficient facts are alleged from which the Plaintiff could assert either that the University's reconsideration process was discriminatory, or that

---

2. *See, e.g., Barry Aviation, Inc. v. Land O'Lakes Municipal Airport Com'n,* 2003 WL 23095997, *8· (W.D.Wis.2003) (dismissing plaintiff's federal claims without leave to amend because, "even construing all well-pleaded facts as true and drawing all inferences in favor of plaintiff," the court was convinced of the futility of amendment).

<br />

1251

the denial of reconsideration itself constituted the first act of discrimination, or both. Plaintiff's failure to detail his theory, even if required,[3] can easily be cured by an amendment without imposing undue prejudice on the Defendant. Federal Rule of Civil Procedure 15(a) provides that a trial court shall grant leave to amend freely "when justice so requires." The Supreme Court has stated that "this mandate is to be heeded," *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), and the Ninth Circuit has indicated that it is to be heeded with "extraordinary liberality." *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir.1990). Consequently, the Court concludes that a material issue of fact exists such that this Court cannot decide, as a matter of law, that amendment of Plaintiff's complaint would be futile.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Amend Complaint (Docket No. 16) is GRANTED, and Plaintiff is granted leave to amend his complaint within twenty-one days of the date of entry of this order;

It is further ORDERED that the Defendant's Motion to Dismiss (Docket No. 11) is DENIED as moot;

It is further ORDERED that the Defendant's unopposed Motion to Quash Attempted Service of Process (Docket No. 12) is GRANTED;

IT IS SO ORDERED.

---

**3.** Federal Rule of Civil Procedure 8(e)(1) states that "[e]ach averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required."